on behalf of the appellate, are you prepared to proceed? I am, sir. All right, then you may proceed. Thank you, Your Honor. May it please the Court, Counsel. My name is Eric Reinhart. I represent Stephen Odette, Benjamin Niskanen, and Brian Hellringle in this consolidated appeal. This case is about whether police officers should be permitted to issue court orders in the form of subpoenas. That is, whether the grand jury subpoena power is an independent procedure or whether it can be subsumed by the police during their normal law enforcement functions. In this case, it was an unprecedented and brazen maneuver by the Lake County State's Attorney's Office to appoint 488 Lake County police officers at the beginning of a grand jury term. Is that for a three-month term? Yeah, I believe so, Your Honor. Okay, so that's a very ear-catching statement, brazen, and all this flawed language, but the question I have to ask you is, can you direct us to some case law or statute that says what they did was per se improper? I think, yes, I think Dallaire and Fellmeier talk about this very delicate balance between allowing the police to go too far and their independent... Well, we were getting off to the point of the question. Oh, that's right. There's some arguments here that may legitimately, I'm not jumping ahead here, that maybe the officer did some things that perhaps weren't exactly followed by what the law contemplates, but on the issue of, you seem to be saying that it was per se improper for Lake County to ask for all of these investigators to be appointed at one time. On what do you base that that's improper? I think to appoint the 488 investigators at the beginning of the grand jury term, through the specific petition and orders that are in the record in this case, under and in the way this case played out... Well, in the way this case played out. Yeah, that's true. That wasn't the intent of the state's attorney when they went to the grand jury and asked if all of these officers be sworn to the grand jury. Was it, do you think it was the intent that these men and women would then be allowed to issue grand jury subpoenas without going to the grand jury? I don't, I think... What was the basis for their appointment? Yeah, I think Your Honor should have asked the right question in my introduction. It would have been a little too ear catching. It was. Thank you. You're not playing to a jury. But tell me, what do you think the basis for appointing, what do you think the scope of that appointment was, Mr. Reinhart? I don't know, respectfully. I think that it is limited by, and I'm not saying this is improper in any way, but we don't know a lot about that initial process, right? We don't know a lot about what was said to the grand jury about their powers. We don't know if this was suggested by the grand jury. We don't know if this was suggested by the state's attorney. And it's okay that we don't know exactly how that played out. But I wish I could tell you a little bit more about what everybody's intent was. But I think both questions you've asked me are right. In the sense to focus us back more on what Covelli did. Because what could have happened, and as I've been preparing this, I should have thought more about this. What could have happened is all 488 investigators could have been appointed on the front end and then consulted with the grand jury. Right. So why would it inherently be improper? I mean, for convenience's sake, I can see arguments why they would do this. And if Covelli had gone to the grand jury, was acting at their direction, didn't do anything independently, you wouldn't be here making that argument, probably. No, of course, of course, that's right. If Covelli had spent two hours with the grand jury on every case, and if the grand jury had deliberated on the subpoenas, and we definitely want to talk about that this morning. No, but I think that Covelli's testimony in the record demonstrates why the court should have concerns about. Let's focus in on that, though. And that's not improper. First of all, you may have gone out of track. Is it true that when he, without informing the grand jury or anyone in the state's attorney's office, other than the paralegal, he issued a subpoena to AT&T seeking this private information without the knowledge of the grand jury? Without the knowledge of the grand jury or the state's attorney, correct? A hundred percent. Okay. Yeah, and I think, so what you really have in this case is that Covelli, there is no doubt, every reasonable inference, and I think everything that I asked about in the trial court, demonstrates that Covelli was having a normal law enforcement kind of day. And he decided to investigate child porn. And that is fine. Who was the subpoena made returnable to? Him. Not the sheriff's department? Not the grand jury? No, definitely not the grand jury. It was returnable directly to him. And what I think is, it sort of tells you the flavor of this. It was returnable directly to him. It said that you could be punished by contempt if you didn't follow it. And it even said don't disclose this to anybody. Now, it's certainly beyond the breadth of our appeal here to talk about what that means. We briefed it, we talked a little bit about it in the trial court in terms of the federal statute and giving notice and all of this. But the reason I want to point that out is it shows some of the dangers in letting these officers do this. I take them at their word that a lawyer did not write this. I take them at their word that it was not an officer of the court bound by the ethical rules. I take it that it was not, and I'm not being glib with this, the police officers have totally different ethical rules. And that's okay. We want them to be tough in fighting bad guys. But that has developed a culture completely different from the rules of professional conduct that myself and every state's attorney is bound by. So the fact that a lawyer didn't draft this subpoena is very concerning. And it sort of gets to the real policy issues at stake here. But Covelli himself says don't disclose this to anybody. Only return it to me. Don't send it to the grand jury. Did he ever transmit, did Covelli ever transmit the documents to the grand jury? No. I can't recall whether he walked in with them on the day that the bill was presented. I apologize for that. He didn't run it by the grand jury. He absolutely did not. No. We had talked about it a little bit before, like what was the basis behind them appointing all of these gentlemen and these women as agents or investigators for the grand jury. And it, I don't know where this verbiage comes from, but it states that they all had been, quote, had been authorized by the grand jury. They were authorized by the court to issue subpoenas for investigative matters to be heard by the Lake County grand jury. To receive materials pursuant to these subpoenas and to provide the documents to the state's attorney's office for enforcement with the laws of the state. That's what this verbiage was when the state submitted petition to make these 488 investigators law enforcement officers. Yes. In a perfect world and properly, he should have issued the subpoena in conjunction with the state's attorney's office or the state's attorney's office issued the subpoena. Is that correct? No, I think he should have. I think he should have consulted with the grand jury. I think. Well, he could he not have issued the subpoena or the state's attorney and returnable to the grand jury? Respectfully, I would still be objecting to that. But that's an authorized use. They commonly do that, don't they? The state's attorney gets a subpoena returnable to the grand jury. Yeah, they don't go to the grand jury and say, hey, I'm going to issue a subpoena. That's exactly what they did in Boston and in 1996. Well, they could. They could, but you don't have to do that. I mean, they would keep the grand jury busy every other every week. I think that I think that that's definitely a concern in terms of that. But I do think that the procedure used in Boston and the 1996 grand jury term where they talk about the grand jury issuing the subpoenas is what the statute. OK, let's let's argue that. Let's talk about it then. Let's say for sake of argument, Mr. Reinhardt, his issuance of the subpoena. Was OK, but not making it returnable to the grand jury or not making it returnable to the court was a real problem.  My issue in this appeal is the issue in Boston, in Boston, most recent Supreme Court pronouncement on this from just last year. The the documents were the grand jury deliberated on the subpoena. There's something very important I want to talk about in terms of this deliberation. The grand jury talked, deliberated on the subpoena and the documents were returned to the Chicago Police Department instead of the grand jury room. And the Boston court talked about how that by itself is not prejudice. And that is definitely not my argument here. I don't think it matters where the documents went. I think that is a traditional prejudice analysis that, as the Boston court specifically said, they contemplated that the documents could have just gone to the grand jury and then been released to the Chicago Police Department under Section 6C appropriately. Let's talk about prejudice then. Yes. Do you think for one minute had Covelli gone to the grand jury with his subpoena and asked them to issue a subpoena for the IP address of this individual who was online chatting about children? Do you think that they would not have issued it? I think that is precisely the problem in this case. I think this is the part of the case, and this is really what I want to talk to your honors about, because I do think we really have to talk about this. Before you go into that, that frustrates you, but are you contesting that you need to still show prejudice here? Not necessarily. Again, on most of them, Boston, you have. Well, in Boston, there was no prejudice with the, quote, sloppy return. But they still said you have to find prejudice. Boston still talks about prejudice. That's true. Boston talks about prejudice, and Wilson also talks about prejudice. Right. But what – I guess I would respectfully say this to the court. We don't – the prejudice is that Odette Niskanen and Hal Regal's private documents were released by a cop. If there's a problem with a – let's say a search warrant is late. Let's say it's the 97th hour instead of the 96th hour. We don't talk about it in terms of prejudice. But that's not the requirement under that for prejudice. But in this case, they tell us to look at prejudice, don't they? I think they're talking about return technique. I think they're talking about return technique. So many of these cases focus on where the documents go, and there's a difference between saying the documents being returned. Wait a minute. You're talking about return, but then just a minute ago you said, no, the prejudice has to be the fact that it wasn't issued by the grand jury. That's – I believe that's the prejudice. I believe the other cases are talking about the return. So I think this is a bit of a – So that answers my question. Of course. In this case, do you think for one minute, if he would have brought this subpoena to the grand jury to ask them to issue it, that with all of the information that he had – that he garnered as a result of his investigation, do you think for one minute the grand jury would not have issued this subpoena? I don't know. That is a separate step. It's like saying, would a judge have issued a search warrant? Well, if he received the information from the AT&T incorrectly, don't you think the AT&T probably would have turned the information over if it were subpoenaed correctly? Well, that gets into a difficult problem because the AT&T records may be subject to – we talked about this in the trial court, but not in the briefs here. The AT&T records are subject to different federal requirements and notice regarding their release, which is a very sticky – What's it got to do with the state? This would have been a state grand jury in any event. But if a lawyer – that's true. That's true. If the grand jury – But that's not an issue in this case. No, no. So why go off on it? But what I'm trying to get at is the prejudice is because his privacy was violated. There's different types of prejudice. In Boston and in Wilson, they talk about whether the mistake or the sloppiness would have led to a different result. That's what we're talking about here. But we don't know that because the grand jury issuing the subpoena is a protection we all have. We don't say, well, the court would have issued a search warrant anyway, so who cares that there wasn't a warrant? Let me ask you a very poignant question because we're dancing around this. Didn't Wilson and Boston each hold – didn't they each hold that evidence that was obtained by an admitted abuse of the subpoena process and that involved the disclosure of information in which the defendant had a constitutionally protected privacy interest, which you're arguing, did not need to be suppressed? Wasn't that the holding in those cases? In Boston – But was that not the holding in those cases? Yes, but in Boston, in Boston, the grand jury issued the subpoena and the documents went to the wrong place. I agree with the State. Who cares? In Wilson, an assistant – Odette Niskanen and Hal Riggle are not arguing that the location of the documents matter except that it is evidence that Covelli was not a true agent of the grand jury, but it's not per se a problem. With respect to Wilson, in Wilson, an ASA issued a subpoena, which is a difference from – which is different from a police officer. The courts have always talked about the connection between the grand jury and assistant State's attorneys. In Wilson, also, the court to some extent was looking at, broadly, the admission of the documents in his trial. So the prejudice analysis folds a little bit more into how did this play out in the trial. Here we have a stipulated bench trial, and our specific argument is that you can't get these records, police officers, by doing this – by doing the process that Covelli did. Respectfully, Justice Shostak, my problem is we can't assume – just as we don't assume what judges – we can't assume what the grand jury would have done in terms of quantum of evidence. Then how do we get to the issue of prejudice without making some – How would we ever get to it under your analysis? Because in Boston, the procedure worked correctly, which was to protect Mr. Boston's rights by filtering this through the grand jury. And they would just return to it. Who cares where they went? In Wilson, an assistant State's attorney – and this is a critical finding in Wilson – in anticipation of the grand jury deliberations, at least in Wilson, there was a specific – my impression is there was a specific grand jury working on the problem. Here, Covelli's law enforcement work obviously predates a specific grand jury. So a really important point that I want to make today, and obviously let Ms. Berg speak, is that the prejudice analysis is complicated because just as if a defendant was tried on day 121 of a speedy trial term, we don't look at prejudice. We have found a pure statutory violation. And in this case, it is the pure statutory violation, which is supported by the policy, that citizens should be deliberating on these grand jury subpoenas, not police officers, that was violated in this case. Should be deliberating on them. What do you mean by that? I believe that the grand jury has to issue a subpoena. Now you're going back. First you say the violation, the Fourth Amendment violation, occurs because Covelli has this information and he's able to see this information. Then you go back and say, wait a minute, the grand jury should have issued the subpoena regardless of where the information goes. Isn't the violation of the Fourth Amendment where who has an opportunity to review this damn information? In this case, Covelli takes it, takes the documents, works with the state's attorneys. Puts them in a folder. To develop a search warrant. Yeah. Doesn't take them to the grand jury to deliberate on a bill of indictment. Correct. And raids my client's houses. Right. Because he got the information. But he got a search warrant from the judge to raid your client's house. That's correct, but only because he got the address through the subpoena. Correct. So that's what the subpoena did. Correct. So I go back to the same question. If the grand jury had issued that subpoena, would he have had the same information? If the grand jury had, yeah, if the grand jury had deliberated on it, then the policy, then the protection that we would all need, which is citizens deliberating on this, would be fine with that. We would not be arguing. My position is that the private information of Odette, Helrigel, and Niskanen was released through police investigation and not the grand jury. I can't tell you how things would have gone if things had gone a certain way. In Boston, they say, well, but if the documents had gone to this room as opposed to that room, everything would have still turned out correctly. There's no deliberation contemplated at that point. But at the front end, if I could just say one thing, I think that grand juries or judges have to be involved in the invasion of citizens' privacy rights. It better be a grand jury or a judge issuing a warrant. It can't be the police. And once that policy point is at the front end of the grand jury process, then I think that's where the prejudice comes in as opposed to the location of the documents. Thank you. Thank you. Thank you. Thank you. Good morning. Morning. May it please the court, with your permission, I would like to continue the discussion that you have been engaging in with counsel, because I believe that that gets to the heart of what our arguments have been. Before you go on, can we distinguish, is it Dallaire? How do you distinguish Dallaire from the case that we have here? I think there are several differences with Dallaire. One of them, in Dallaire, up front, the law enforcement officers knew who they actually were investigating. Were the law enforcement officers sworn grand jury officers? No, they were not. Because they were here? No, they were not, which would be the biggest distinction here. I would like to make one point that dovetails into a record thing. I think that we may have a slight disagreement about the record, and I'm not entirely sure from Your Honor's view if it matters. But at supplemental record, page 19 of the Odette record, it indicates that Detective Covelli spoke with the assistant state's attorney. He was assigned to cyber crimes in Lake County, and apparently there was an assistant state's attorney who was on a division in Lake County that also dealt with cyber crimes. And he spoke with an assistant state's attorney from that division prior to drafting the subpoena. And so at all times, the state's attorney's office also knew about the subpoenas and also knew at the point that the information that was developed at the subpoenas would then be used for the complaint for the search warrant. And the complaint for the search warrant indicated the nature of the investigation, including that the primary information was developed through the grand jury subpoena. Your Honor's had asked about there being 488 agents appointed for the term. Well, I asked, and he seemed to believe initially that that was a brazen attempt. Is there anything improper about having all of these investigators appointed at the same time? In answer to that, I will tell you what the assistant state's attorney said. The assistant state's attorney said that both the petition for the agent investigators and the court's order granting the petition were drafted in response to Dallara. Because in Dallara it was considered a serious problem that the investigators had not been appointed as agents of the grand jury. Well, that would be the state's attorney's realm, but in light of that case, he would say, well, we'll take the safest route. We'll just make them all appointed at once. Exactly. And use them as we need them. Exactly. But it was never their intent that they could just kind of go rogue and issue subpoenas. Well, and again, nobody went rogue here. Detective Connelly was assigned to a cyber crimes unit that was investigating child pornography. That's not going rogue. That's doing its job. She's alluding to you have to concede that if you're appointed as an investigator in the grand jury, you have to communicate with the grand jury and have subpoenas go to them. You just don't conduct it like a private investigation. You would without a grand jury. Well, and again, he went to the state's attorney both prior to getting the subpoenas issued, prior to drafting the. . . What state's attorney? Paralegal? He went, I believe he went to Mary Stanton. Mary Stanton was the one who justified. The search warrant. For the search warrant, he definitely went to the state's attorney. No, he already had the information. Pardon me? He already had the information. Yes. He issued a subpoena that was returnable to him, not to the grand jury, correct? Yes. And the petition for the assignment of the investigators as grand jury agents and the order granting that petition indicated that they would be returned to him. So that was consistent with court process at the time the grand jury was seated. Well, if this is permissible, why would any person ever need to deal with the grand jury again? My sense is that . . . Or returnable to the court. Why not have it returnable to the court when you have confirmation that it's seated like this? I suppose, and this may be a problem with the nature of the practice that I've had, that I'm not entirely sure about the logistics of things. My sense is that whether they had gone to the grand jury initially and tried to give a recap in a couple of minutes about the nature of an investigation and why the information was needed, and then have it returned to the grand jury or to the investigator, it would be returned to people who knew what it was, what it was for, and why it mattered. But then he didn't then immediately turn around and give them to the grand jury. He gets them, according to the facts, and tell us if we're wrong. He puts them in his file. Yes. Does that sound like he's working with the grand jury? My understanding from reading this is that the grand jury was only consulted on this at the point that the assistant state's attorney asked for the indictment. And at that point, Detective Covelli testified, explained the nature of the subpoenas, explained the nature of the investigation and what had been brought forward. And it was at that point that the grand jury determined whether or not to give the indictment. Let me ask you a question, if you know the answer to this. How would a typical grand jury subpoena go down? I will say that I worked on Dallaire, and at that point, they got a court order for me to sit in on a grand jury. And the only time I've ever been in one. And during that period, over a good chunk of time, say six hours, a good number of assistant state's attorneys came in, would usually bring a witness who would testify. And then the grand jury would deliberate whether to grant a true bill or not. Oh, I understand how a grand jury works. I'm just saying with respect to a grand jury subpoena for records, how does that work? I know how a grand jury works. And I'm sure every one of you knows far more than I do on any of this type of stuff. But I'm just saying, typically, if Mr. Reinhart is saying this is all wrong, how would it rightfully be? In discussing the case, the trial court judge suggested that the situations where a detective and or an assistant state's attorney spoke with the grand jury before issuing the subpoenas might well be the better practice. And that apparently is a practice in some jurisdictions. Would you even need to speak to the grand jury or just issue a subpoena and have it returned to the grand jury? I think my concern with returning a grand jury without prior discussion, and especially if you were looking for information based on computer records, which might or may not be readable to most of the grand jurors, I don't know if there has been an honest, forthcoming discussion before the subpoenas are sought and returned, if it would mean anything to the members of the grand jury. I think I would agree with the trial court judge that perhaps a better procedure would be a brief discussion at some point in the investigation before the subpoenas are issued. Did you say that the court order, though, that appointed them as agents of the grand jury, that that actually provided for the process that Covelli used? It did. And set that forth in the order? It did. And the trial court, in discussing it, took the position that although there may be a better procedure, that does not make the procedure that was used illegal. And again, the trial court judge took the position that return other than to the grand jury was not legal under the statute. And his determination, however, was that there was no prejudice because this would have always been available information. Well, that's what this case is going to turn in, I think. I mean, outside of some procedural irregularities, and I'm satisfied there are some procedural irregularities with all due respect to your argument that can be pointed out here. The question is, does the defendant need to show prejudice? Yes. Okay. And here's the other thing I want you to hold in. He makes a very interesting argument, quite frankly. This case is distinguishable from Wilson and Boston because in those cases the State used the improper subpoenaed evidence at trial only. They didn't, as in here, it was a bootstrap. Yes. Of the argument, got the evidence, didn't use it at trial, got a search warrant, and got further evidence. Yes. So is that not distinguishable? It is distinguishable. I don't know that that inherently makes it prejudicial. I think somehow it's showing prejudice. And, you know, again, in reading these cases, I don't know that anyone actually decided prejudice, even the layer which we lost. I think my recollection is we lost much more on procedural grounds and determination of privacy interest rather than any actual prejudice that would be shown. You say the diversion or the issuance of the grand jury subpoena by Covelli was okay because he was authorized to do that with that appointment, correct? Yes. Was the diversion of the records to Covelli improper? No. Again, it's operating on both the petition for appointment and the trial court's order granting that petition. Both of which provide for return to him. Should it have provided for return to him? Or should it have provided for return to the grand jury? And, again, I guess my concern is sending things to the grand jury without having discussed them previously would be a bunch of meaningless paper. So I don't know that the return is the issue as much as the nature of the authorization and a demonstration of some form of prejudice. Well, here would be the argument that that's, quite frankly, a little bit troubling to me that I'm wrestling with. If, in this case, an officer totally disavows any procedures at all and says, I'm going to do what Covelli did, okay, because the argument is the information, if it was done properly, would still end up in court at some point. So, therefore, what would be the deterrent to every officer operating in this way? And this is different than Wilson because a search warrant was first obtained irregularly. You know, that's his argument, without following regular procedures. And then it was bootstrapped. This is a little bit beyond what we have in Wilson in Boston. And what would be the deterrent to a police officer doing exactly what Covelli does in here by saying, in his superficial appeal, pardon me, the same information that he got from AT&T improperly, he's arguing, would have ended up in the state's attorney's hands anyway had the state's attorney done it through the grand jury. Downed all the I's and crossed the T's. But it's a little different here because you have a search warrant and additional information being obtained that wouldn't have been obtained. I understand that. I think if we're talking about any detective going rogue, again, Covelli worked under a court order in his appointment which said that he could do whatever he wanted. Well, it doesn't matter. He doesn't get protection. That's form over substance, isn't it? I have a court order. I can do whatever I want. Is that the argument here? Aren't we here also determining whether that court order was proper? I mean, Blake County or any county in the state can issue orders for people to do things. It doesn't mean that it's proper. Okay. Maybe he felt he was doing the right thing. Absolutely. But I don't think there's any question here of bad faith. Any question what? Of bad faith. No. Because of anyone. No. What I'm saying is let's assume the order was proper. Does that end the inquiry? An officer can do whatever he wants, conduct his own private investigation, leave the grand jury out completely? Is that what you're saying? No. And I think the Fourth District and the Fifth District following it in discussing Dallaire have come to the conclusion that the notion of an independent police investigation is simply an illusory concept because the grand jury, the investigators, and the state's attorney work in such close concert. There isn't, I think, relying on their precedent, any particular value to a detective to do a so-called independent investigation. I think there is no such thing as an independent investigation. Here, again, you've got a detective who is appointed, who worked closely with the state's attorney's office, and who developed evidence. And, yes, you're absolutely right. That evidence was used to develop other evidence. And so to the extent, I totally concede, to the extent that you're looking at a privacy interest here, it is different than Dallaire. Is it different than Boston? It's different than Boston. All those cases. Correct? How is it different than Boston? You know, I cannot remember all of the facts, all of them, but I think it may well be. We'll take a look at it. Boston and the other case, Wilson, the evidence went directly into court. There was no further evidence obtained by the abuse of the power, that is, a search warrant, that then eventually went to court. There's something here that didn't happen in Boston and Wilson, correct? Yes. Okay. Yes. Well, I think it was prepared at the direction of the state's attorney in Boston and not at the direction of the grand jury. I'm sorry? And returnable to the assistant state's attorney. No, returnable isn't the issue. Correct. It was something that was happening in the interim. It didn't go right to court. It went to the officer who then got a search warrant, and then further evidence went to court based on the alleged irregularities. So it is a little different. And again, and here there's no dispute that because the internet protocol did not indicate who the user was, that the actual name of the people who were being investigated was dependent upon the grand jury subpoenas. So I totally agree with you. There is a different step here. Right. And that is distinguishable. I think the fact that something is a different procedure, however, again, where the record shows that the detective worked with the state's attorney's office, both in drafting the subpoenas and in drafting the search warrant, and then in testifying before the grand jury at the point that the grand jury was asked to return an indictment. Let me frame it in another way, because I think the state's vote. The argument would be in Wilson and Boston, if you issue an officer does exactly what Tavelli did here, obtains the information, okay, and then obviously does it on his own, but later turns it over to the grand jury, which the state could have done, the defendant ends up in the same place, and I agree he would have to show prejudice. But that isn't what happened here. The state allegedly competed by the illegal procedures because they used it to bootstrap and get greater evidence totally outside the grand jury proceeding and then turn it over later for use against the defendant. This is different fundamentally, in my humble opinion, between Boston and Wilson. I think where I have a problem with your position, Your Honor, is that your position is based on there being illegal procedures. I don't think the procedure was illegal. I know, and that's going to be the threshold question to begin with. My position would be there was neither an illegal process nor was there demonstration of actual prejudice from this. Because, again, although I absolutely admit that they could not have gone farther without an initial subpoena because they did not know who the people were in the chat room without the information derived from the subpoena. So it was an investigative tool as opposed to an act to garner information. It was an investigative tool to get the information. Yes. And I guess my position would be despite the fact that they did not do what the trial court found would have been a better practice, which is contact the grand jury about the nature of the investigation before they got the subpoena, I cannot concede that what they actually did do was in fact violative of the act. Primarily, for instance, they maintained the secrecy of the grand jury. They maintained, you know, only the handful of people who needed to know did know. Information was given to the people who executed the search warrant the morning that the search warrant was executed as to how it was going to be proceeded. So the actual underpinnings of the independence of the grand jury were not violated. And again, as the Fourth District has found, there is no such thing truly as an independent investigation because everything is under the umbrella of a state's attorney. Thank you very much. Counsel, your name is fine. I agree with counsel that the independent investigation, I think it's a scarecrow argument to say that the independent investigation problem is the thing that's going on here because of the way they all work together. If he would have gone to the grand jury, let's say after he received the information, after he received the subpoena, what would he have done when he went to the grand jury? What would he have said to them? I think he could have. He got these records? Yeah, he could. No, I agree. I mean, that's why I'm less concerned about the return per se, except that the lack of a return shows he's not an agent. It is evidence that he is not an agent because he's not really working with them. They don't have a separate table with these investigative numbers on it and say this is what we're working on today. But what would he say to the grand jury if he were, quote, unquote, working with them? Well, he'd say, I don't think it would take very long. He would say, last night I noticed an IP internet protocol downloading some child porn. I'd like your permission to issue a grand jury subpoena to determine that address. And the reason I think we all have privacy rights, whether it's our bank records or our phone records, in Dallaire they grab phone records without going through the grand jury. In this case, they grab these guys' internet information without going to a grand jury or a judge. That is the policy problem here. Either a judge or a grand jury must be a filter from unbound police officers doing whatever they want. I agree. Police officers work with prosecutors and they all work with grand juries. But in working with a grand jury, they then need to get permission before they start issuing court orders. Here's a simplistic response to that from a prejudice standpoint. Somebody's going to say, well, what's the difference? The information from AP&T will be exactly the same if Covelli followed the procedures and if he didn't. Correct? Yes, but if you think of it as a statutory right or a statutory protection, then we can't just assume what the grand jury would have done. I understand that. Remember the case law is telling us that in these circumstances prejudice has to be measured. In Boston, they talk about Rente and this other case from 1991, where they talk about the quantum of evidence and how the state's attorney must issue a brief statement to the grand jury summarizing the evidence. How does that fit into Covelli? Well, I think your better argument is here, and it needs to be emphasized, is that even if you concede and we find that prejudice must be shown on some level, the legitimate argument is there's a prejudice here, a la the search warrant that was not present in Wilson or Boston. That's true. Obviously, I agree with you on that. That's in our brief. That is the prejudice that we identify in both our brief and our reply brief. Because you can't say it would have ended up in the same place. We don't know that because they wouldn't have gotten the search warrant because they wouldn't have had an address. That's how this actually worked, is that they see the illegal activity, but they don't have a physical address. But they would have got it had they gone to the grand jury or had they subpoenaed it the way Covelli did. So they would have got the address of the IP user in any event. Assuming that the grand jury was okay. That's why I think it is the grand jury deliberation, whether we think of the brief statement that they talk about in Boston in terms of the quantum of evidence or whether we imagine how this should actually work. That's why I think that always answers the question, is that if the grand jury authorized the issuance of the subpoena, then they would get the information and they could then share it with law enforcement to issue warrants. But you would have that additional step as opposed to law enforcement simply getting this information. Cutting out the grand jury completely out of the equation. Completely out of it and then getting a search warrant. So the independent police language that you see in Dallaire is sound when we think about search warrants that Justice Hudson has brought up. In terms of them doing things on their own, independent of the grand jury deliberation or investigation, they got a search warrant here and they ended up getting into my client's houses by completely getting around the grand jury. They should do independent investigations. They should then take the results of those independent investigations and talk to a judge. Or issue an administrative subpoena. This is in my brief. I don't have the statute number. There's something called an administrative subpoena, which is actually what I think they thought this was to some extent. You can issue an administrative subpoena and that's then returned to the court. Which is even a less burden. That's true, but it's something. Don't we think that the courts or grand jurors should be between us and the police? That's what the people wanted when they wrote Section 112. 112 says that grand jury issues the subpoenas. There must be a purpose to that, right? Right. We can assume that that's what they meant. I agree with Justice Shostak's questions about what about the court order here? The court order couldn't have given the investigators the deliberative right. I mean, just because there's a court order, they can't delegate everything to the investigators and take the grand jury completely out of the process. So for the reasons that we talked about in our briefs, we believe that this court should adopt a common sense approach. And it is the grand jury as a body that can issue the subpoenas and not the police. We would respectfully ask that this court overturn the trial court's denial of our motion to subpoena. Thank you. Thank you. Okay. I want to thank both counsel for the call of the arguments here this morning. The matter will, of course, be taken under advisement and a written decision will be issued in due course. We stand adjourned for the day, subject to call. Thank you.